UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TINA L. WAGONER,

                                  Petitioner,

        v.

LETITIA JAMES, Attorney General of the State of N.Y.,

                                  Respondent.
_____

DECISION AND ORDER

22-CV-6131L

## INTRODUCTION

Petitioner Tina L. Wagoner has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging her 2016 conviction following a jury trial in New York County Court, Cattaraugus County, of one count of attempted first-degree rape and one count of second-degree promoting prostitution. Wagoner is currently serving an aggregate sentence of 12 years incarceration on those charges. For the reasons that follow, the petition is dismissed.

## BACKGROUND

In November 2012, Salamanca (N.Y.) Police Department Sergeant Adam Carlson conducted a traffic stop of a car in which Wagoner was a passenger. At one point during the traffic stop, Wagoner, who was behaving strangely, got out of the car and started pulling objects out of her pockets. One of the objects was a folded-up piece of paper, which she handed to Carlson. Finding no drugs or other contraband inside, he put the paper in his pocket, and after searching the car with the driver's consent, he allowed the driver and Wagoner to leave.

When he later looked at the paper, Carlson saw that it was a handwritten document dated "Sunday 11, 2012," stating, "I, Tina Lynn Wagoner, confess selling my daughter, [the victim] to," followed by a list of nineteen names. What appears to be Wagoner's signature is at the bottom of the page. State Record ("SR") 376.

The ensuing investigation led to Wagoner being charged in a six-count indictment, comprising rape and promoting-prostitution charges with respect to three men on three separate occasions. Two counts relating to one of the men were dismissed on the prosecutor's motion prior to jury selection, and the case proceeded to trial on the remaining four counts. The two counts at issue here stemmed from an incident on the night of August 28, 2012, involving the victim and one Christopher Terhune. The other two counts concerned an incident in October 2012 involving the victim and another man, Thomas Doner.[1]

The jury found Wagoner guilty on all four counts. The County Court judge sentenced her to an aggregate determinate prison term of 35 years. On direct appeal, the Appellate Division reversed the convictions on the two counts relating to Doner, on the ground that the verdict on those two counts was against the weight of the evidence.[2] The court affirmed the conviction on the remaining two counts, concerning Terhune, but reduced the sentence to a determinate 12-year term on Count 5 (attempted rape) and an indeterminate term of 3 to 12 years on Count 6

---

[1] Both Terhune and Doner pleaded guilty to offenses related to their interactions with the victim.

[2] The court held that the evidence was legally sufficient to support Wagoner's conviction on all four counts, but that the verdict on the counts relating to Doner was against the weight of the evidence. The primary reason for the court's different holdings as to the counts against Doner and Terhune was that the victim's testimony concerning the incident with Terhune was "much more damaging" about Wagoner's knowledge and intent. *See* 195 A.D.3d at 1600.

(promoting prostitution), to run concurrently. *People v. Wagoner*, 195 A.D.3d 1595, 1600-01 (4th Dep't 2021).

The Appellate Division afterwards denied Wagoner's motions for reargument, and the Court of Appeals denied leave to appeal. The United States Supreme Court denied her *pro se* petition for certiorari. *See* 198 A.D.3d 1338 (4th Dep't 2021); 201 A.D.3d 1372 (4th Dep't 2022); 37 N.Y.3d 1030 (2021); 37 N.Y.3d 1100 (2021); 142 S.Ct. 867 (2022). Wagoner also filed several collateral challenges to her conviction, all of which were denied.

In her habeas petition filed in this Court, Wagoner raises a host of challenges to her conviction, none of which has merit. The bases for these claims may be broken down into four categories: (1) speedy trial violations; (2) insufficiency of the evidence; (3) prosecutorial misconduct; and (4) judicial bias and related claims concerning the trial judge's rulings.

## DISCUSSION

### I. Habeas Corpus Cases: General Principles

At the outset, certain principles must be kept in mind. First, in reviewing state criminal convictions in a federal habeas corpus proceeding, a federal court does not sit as a super-appellate court, to decide matters of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). That long-established principle was reinforced by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, when a claim has been adjudicated on the merits in state court, federal courts must give deference to the state courts' findings and conclusions.

On questions of pure fact, "[s]tate court fact-findings, if fairly made, are accorded a presumption of correctness unless the objecting party rebuts the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). On "mixed" questions involving both factual findings and conclusions of law, federal habeas corpus relief is available only if the state court proceeding: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). That standard poses "a formidable obstacle to habeas relief ... ." *Clark v. Noeth*, 351 F.Supp.3d 369, 371 (W.D.N.Y.), *appeal dismissed*, 2019 WL 7876471 (2d Cir. 2019).

Where a state court rejected a petitioner's habeas claim on the merits, then, "the federal court must 'focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent.'" *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir. 2001) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001)) (additional citations omitted). "A state court decision slips into the 'unreasonable application' zone 'if the state court identifies the correct governing legal principle from [the Supreme Court's] decision but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (modification in original). To meet that standard, it is not enough that this Court may have decided the question of law differently; rather, to deem habeas relief appropriate, the state court's application of the law must demonstrate some additional "increment of incorrectness beyond error." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000).

In addition, before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust her remedies in state court. 28 U.S.C. § 2254(b)(1). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (citations omitted).

"To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim" in state court, "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation and citation omitted). If the petitioner failed to do so, and is now procedurally barred from raising the claim in state court, the petitioner must "demonstrate cause and prejudice for the default," *Gray v. Netherland*, 518 U.S. 152, 162 (1996), or that the federal court's failure to review the claim "will result in a fundamental miscarriage of justice," *Harris v. Reed*, 489 U.S. 255, 262 (1989), in other words, that the petitioner is actually innocent.

## II. Petitioner's Claims

### A. Speedy Trial Issues

Wagoner's first ground for relief relates to delays in the prosecution of the criminal case, both pre- and post-indictment. *See* Petition at 3 (referencing "the 30-month pre-accusatory delay [that] was followed by 16-month pre-trial incarceration"). Wagoner raised this argument in her

direct appeal, and the Appellate Division rejected it. As to the delay in bringing charges, the court stated that "[a]lthough the offenses occurred in 2012 or before, [and] defendant was not indicted until February 2015, ... she was not denied due process by the preindictment delay." 195 A.D.3d at 1596.

The court based that conclusion on a number of factors, including the fact that the delay was largely caused by circumstances related to the victim, who was 12 years old at the time of the last offense, had never attended school, and did not disclose Wagoner's involvement in the underlying offenses until she had spent months in treatment. The court also held that Wagoner's contention that she was prejudiced by the death of two material witnesses had not been preserved for appellate review because she had not made that argument before County Court, and that "[i]n any event, the resulting prejudice was minimal and d[id] not outweigh the good-faith determination to delay prosecution." *Id.*

The Appellate Division did not address post-indictment, pretrial delay because Wagoner did not raise that issue in her direct appeal. She did raise it in a motion she filed in the County Court to vacate the judgment under N.Y. C.P.L. § 440, and the County Court rejected it on the ground that speedy-trial issues could have been addressed in Wagoner's then-pending direct appeal. SR 83.

In the case at bar, Wagoner's claim concerning pre-indictment delay must be rejected because the Appellate Division's decision on the merits was not contrary to, nor did it involve, an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. The Supreme Court has indicated that lengthy pre-indictment delays can implicate due process concerns, but the Court has never set out any clear-cut test for determining

the issue, other than to state that lower courts should apply "settled principles of due process," and should consider both "the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco*, 431 U.S. 783, 790, 797 (1977). *See also United States v. Marion*, 404 U.S. 307, 324-26 (1971) (stating that the Fifth Amendment, in some circumstances, may require dismissal of an indictment based on delay, even where the prosecution was brought within the applicable limitations period, but finding no due process violation in that case because the defendant neither alleged nor proved "actual prejudice" and because there was "no showing that the Government intentionally delayed to gain some tactical advantage" over the defendant).

It is debatable, then, whether it could be said that the law in this area has been "clearly established" by the Supreme Court; *see Lambright v. Shinn*, No. __, 2022 WL 4111537, at *9 (D.Ariz. Feb. 9, 2022) ("the law concerning due process and delay is not clearly established"), but even if it has been, the Appellate Division's decision was not contrary to such law. The court weighed the relevant factors, including the reason for the delay and the absence of prejudice to Wagoner, and concluded that she was not denied due process. The court's findings and conclusions were not objectively unreasonable, either on the law or the underlying facts. *See McFadden v. Graham*, No. 18-cv-865, 2019 WL 406160, at *5-*6 (W.D.N.Y. Aug. 25, 2019) ("McFadden cannot show that the Appellate Division was objectively unreasonable in finding that the pre-indictment delay did not violate his due process rights").

With respect to post-indictment delay, Wagoner's arguments concerning that matter were rejected by the County Court on procedural grounds: that this claim could have been raised in her direct appeal. In support of its ruling, the court cited C.P.L. § 440.10(2)(b), which provides that "the court must deny a motion to vacate a judgment when ... [t]he judgment is, at the time of

the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal ... ."

"[A] federal court may not review federal claims that were procedurally defaulted in state court–that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S.Ct. 2058, 2064 (2017). "To qualify as an 'adequate' procedural ground, capable of barring federal habeas review, a state rule must be 'firmly established and regularly followed.'" *Johnson v. Lee*, 578 U.S. 605, 608 (2016) (per curiam) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)) (additional internal quotation marks omitted). "NYCPL § 440.10(2)(b) constitutes just such an independent and adequate state procedural rule that operates to bar federal habeas relief." *Totesau v. Lee*, No. 19-CV-6992, 2022 WL 1666895, at *18 (E.D.N.Y. May 25, 2022) (citing *Holland v. Irvin*, 45 F.App'x 17, 20-21 (2d Cir. 2002)); *see also Roberts v. Griffin*, No. 16-CV-5970, 2019 WL 456179, at *10 (E.D.N.Y. Feb. 5, 2019) ("The Second Circuit has recognized CPL § 440.10(2)(b) to be an independent and adequate state law ground for decision and, therefore, as a bar to federal review").

The County Court explicitly rejected Wagoner's record-based speedy-trial claim because that claim should have been, but was not, raised on direct appeal. The court's order explicitly cited § 440.10(2)(b). This claim is therefore procedurally defaulted, and Wagoner has not shown cause for the default or actual prejudice as a result. Although she now belatedly asserts her actual innocence, and claims that two individuals who died in the interim between her indictment

and trial would have exculpated her, those claims are entirely conclusory. Wagoner is not entitled to federal habeas relief on this ground.

### B. Sufficiency of the Evidence

Wagoner next contends that the state courts engaged in an "[u]nconstitutional application of Penal Law statutes." (Dkt. #1 at 4.) In effect, she asserts that the evidence was legally insufficient to support her convictions on the two counts relating to Terhune.

Wagoner raised an insufficiency claim in her direct appeal (except for certain aspects of the claim, as explained below), and the Appellate Division rejected it, noting that: Wagoner "admitted 'selling [the victim]' to the men named in the indictment, as well as to numerous other people"; "[t]he victim testified that the two men named in the counts of the indictment of which defendant was convicted committed the alleged sexual offenses against her in defendant's home, where the victim was then residing, after they brought defendant alcohol or drugs"; and "both men pleaded guilty to offenses related to their interactions with the victim." 195 A.D.3d at 1598.

Sufficiency of the evidence claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, "evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Second, a "state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Id.* (citation and internal quotation marks omitted). *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court

decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable").

In reviewing a sufficiency of the evidence claim, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). As to the promoting-prostitution charge, § 230.30(2) of the Penal Law provides that a person is guilty of promoting prostitution in the second degree "when he knowingly ... [a]dvances or profits from prostitution of a person less than eighteen years old."

With respect to the attempted rape charge, Wagoner was charged with acting in concert with Terhune, and aiding and abetting his attempted rape of the victim. The attempted crime, first-degree rape, is committed when a person "engages in sexual intercourse with another person ... [w]ho is less than thirteen years old and the actor is eighteen years old or more." Penal L. § 130.35(4). A "person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." Penal L. § 110.00. New York's aiding-and-abetting statute, Penal L. § 20.00, provides that "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."

As the Appellate Division reasonably concluded, the evidence at Wagoner's trial was more than sufficient to support Wagoner's conviction on these charges. In fact, the court found that the guilty verdict on these counts was not only based on sufficient evidence, but that it was

not against the weight of the evidence, which is a less demanding standard for a defendant to meet.[3] *See People v. Colter*, 206 A.D.3d 1371, 1373 (3d Dep't 2022) (explaining difference between the two standards). As the court noted, besides Wagoner's voluntarily produced handwritten confession, the victim testified that Terhune gave defendant alcohol, in part, "to have sex with [the victim]," although due to his own intoxication, Terhune was unable to commit the actual rape. In addition, there was evidence that Terhune's then-girlfriend came to Wagoner's home on the night in question and discovered Terhune, naked from the waist down, in bed with the victim, who was wearing only a nightgown. 195 A.D.3d at 1599-1600.

As indicated above, this claim is also partially unexhausted. In her habeas petition, Wagoner argues, *inter alia*, that there was no evidence that the victim engaged in the practice of prostitution, and that there was no forensic evidence of repeated acts of sexual intercourse. (Dkt. #1 at 4.) Wagoner did not raise those arguments in her direct appeal. Wagoner has not established cause for that procedural default, or resulting prejudice.

### C. Prosecutorial Misconduct

In her petition, Wagoner raises a host of instances of alleged prosecutorial misconduct, none of which provide a basis for relief. Some, such as her claim relating to the prosecutor's summation and his alleged interference with witnesses and compulsory process, are either unexhausted or procedurally defaulted, and Wagoner has not demonstrated cause or prejudice for her default.

---

[3] Although Wagoner does not appear to assert a claim in her habeas petition that the verdict was against the weight of the evidence, I note that such an argument would present a claim under state law, which is not cognizable on habeas corpus. *McKinnon v. Superintendent*, 422 F.App'x 69, 75 (2d Cir. 2011).

Most of these claims raise matters of state law that are not cognizable on federal habeas review. That includes Wagoner's arguments concerning grand jury proceedings, *Rosario* issues, examination of witnesses, and chain-of-custody matters.

To the extent that any of Wagoner's assertions about alleged prosecutorial misconduct could be construed to raise due process or other issues of federal constitutional law, and to the extent that those arguments were properly presented to the state courts, Wagoner has not demonstrated that the state courts' rejection of those arguments was unreasonable or contrary to federal law as clearly established by the Supreme Court. Wagoner is therefore not entitled to habeas relief based on her claims of prosecutorial misconduct.

**D. Judicial Bias/Unfair Trial/Actual Innocence**

Wagoner's remaining arguments may be characterized generally as asserting that she is innocent of the charges against her, and that she was convicted on those charges due to judicial bias and misconduct that denied her a fair trial.

This claim, too, is procedurally defaulted. Wagoner first raised these arguments in her initial § 440 motion, and the County Court denied her motion on that ground pursuant to § 440.10(2)(b) because those arguments could have been raised in her direct appeal. SR 83. Again, Wagoner has not shown cause or prejudice for that default.

In any event, these claims are meritless. Wagoner has done little but recite a list of the trial court's rulings that were adverse to her, or not to her liking, and asserted that the court must have been biased against her, and that the cumulative effect of these rulings denied Wagoner her Sixth Amendment right to a fair trial. The rulings in question involve matters of state law, and nothing in the record suggests that they were erroneous, much less so egregiously and blatantly

wrong that they must have resulted from judicial bias, or that they rendered Wagoner's trial fundamentally unfair.

Finally, Wagoner asserts that she "did not commit the crimes [she was] accused or convicted of ... ." (Dkt. #1 at 7.) She does not allege that new evidence has come to light that establishes her innocence, but that the state courts "looked the other way" when she attempted to establish her innocence at trial. Essentially, she claims that the jury reached an incorrect verdict.

Similarly to her claims concerning the trial court's rulings, Wagoner would have this Court act as a "super-appellate court," which is precisely what it may not do in deciding a habeas petition. *Estelle*, 502 U.S. at 67-68. It is not the role of this Court to decide whether the state courts or the trial jury "got it right," but to determine whether Wagoner has properly presented any grounds for determining that her conviction was obtained in violation of her rights under the United States Constitution. She has not done so, and her petition must therefore be dismissed.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus (Dkt. # 1) is DISMISSED. Because petitioner has not made a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 9, 2022.